**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**JACKSON DIVISION**


BRENT FARRIS                                                                                    PLAINTIFF

v.                                                                            Civil Action No. 3:04-cv-792WS


MISSISSIPPI BAPTIST HEALTH SYSTEMS, INC.;
KENT STRUM; KURT METZNER; C. GERALD
COTTON; AND JOHN DOES 1-10                                                   DEFENDANTS


**ORDER GRANTING REMAND**

Before the court is the motion of the plaintiff to remand this case to the Circuit

Court for the First Judicial District of Hinds County, Mississippi pursuant to Title 28

U.S.C. § 1477(c)[1].  The plaintiff Brent Farris is a former consultant with Central

Mississippi Management, a company formed and controlled by the defendant

Mississippi Baptist Health Systems, Inc.  Farris brought the instant lawsuit in state

court asserting claims for breach of implied and express contract, retaliatory

discharge, outrageous conduct, tortious interference with a contract, and intentional

infliction of emotional distress.  According to the averments of the plaintiff, the

defendants attempted to destroy his livelihood after he cooperated with law

enforcement officials in a matter involving claims of medicare abuse and overcharges

for the purpose of creating bonus income for physicians associated with the

---

[1]Title 28 U.S.C. § 1447(c) provides that "[a] motion to remand the case on the basis of any
defect in removal procedure must be made within 30 days after the filing of the notice of removal under
section 1446(a)." If at any time before final judgment it appears that the district court lacks subject matter
jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs
and any actual expenses, including attorney fees, incurred as a result of removal.

defendants.  Diversity among these parties is incomplete[2], thereby precluding this

court's jurisdiction based on diversity of citizenship.[3]

According to the defendants' removal papers, after the initial complaint

charging only state law claims was filed, the plaintiff served responses to discovery

propounded by the defendants and admitted that he claimed a right to recovery in this

case under "federal law."  No specific claim under federal law has been asserted by

the plaintiff at any time relevant to these proceedings, either in his pleadings or

otherwise.  Instead, according to the plaintiff, federal law may provide a theory

substantiating the proof for a state law recovery which he does not wish to discard at

this time.

Apparently under the belief that the plaintiff's admission regarding the

possibility of reliance on federal law created federal question jurisdiction in this court

under Title 28 U.S.C. § 1331,[4] the defendants removed this case to federal court

where the plaintiff now seeks remand based on untimely removal.[5]

---

[2]All of the named parties in this dispute reside in Mississippi, thereby obviating federal diversity jurisdiction over this case since the complete diversity of the adverse litigants is not present.  *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806).

[3]Title 28 U.S.C. § 1332(a) states in relevant part that, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between- (1) *citizens of different States⋯*"  *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996).

[4]Title 28 U.S.C. § 1331 provides that, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

[5]Title 28 U.S.C. § 1446(b) provides that "[t]he notice of removal of a civil action or proceeding *shall be filed within thirty days* after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such

## FEDERAL QUESTION JURISDICTION

Absent diversity of citizenship, federal question jurisdiction is required in order to remove a case to federal court. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987).  To determine whether an action presents a federal question for removal purposes, this court must examine the allegations of the plaintiff's well pleaded complaint.  *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 366 (5th Cir. 1995).  Under the well pleaded complaint rule, a federal question must appear on the face of a plaintiff's state court complaint before a federal district court can exercise removal jurisdiction.  *MSOF Corporation v. Exxon Corporation*, 295 F.3d 485, 490 (5th Cir. 2002).  In the instant case, no specific federal claim appears in the plaintiff's complaint.

Of course, there exists an independent corollary to the well-pleaded complaint rule known as the "complete preemption" doctrine. If an area of state law has been completely preempted by federal law, then any claim allegedly based upon that preempted state law is considered, from its inception, a federal claim and hence arises under federal law." *Caterpillar*, 482 U.S. at 393.  Moreover, in those cases where the plaintiff has available no legitimate or viable state law cause of action, but only a federal claim, he may not avoid removal by artfully casting his federal suit as one arising exclusively under state law." *Carpenter*, 44 F.3d at 366.  "The artful pleading doctrine also is a narrow exception to the well-pleaded complaint rule in

---

action or proceeding is based, or within thirty days after the service of summons ⋯ whichever period is shorter."

those cases where preemption is complete."  *See Waste Control Specialists, LLC v.*

*Envirocare of Texas, Inc.*, 199 F.3d 781, 783 (5th Cir. 2000).

The United States Circuit Court of Appeals for the Fifth Circuit has laid down a

three-part test for finding complete preemption: the court must be assured that (1) the

involved federal statute contains a civil enforcement provision that creates a cause of

action that both replaces and protects the analogous area of state law;  (2) there is a

specific jurisdictional grant to the federal courts for enforcement of the right;  and (3)

there is a clear Congressional intent that claims brought under the federal law be

removable.  *Heimann v. National Elevator Industries Pension Fund*, 187 F.3d 493, 499

(5th Cir. 1999);  *Johnson v. Baylor University*, 214 F.3d 630, 632 (5th Cir. 2000)

(complete preemption, which creates federal removal jurisdiction, differs from more

common ordinary preemption or conflict preemption which does not).

An example of a clear statement by Congress that state-law claims will be

removable is found at Title 42 U.S.C. § 2210(n)(2)[6], the Price-Anderson Act, which

transforms into a federal action "any public liability action arising out of or resulting

from a nuclear incident.  *See El Paso Natural Gas Company v. Neztsosie*, 526 U.S.

473, 484-85, 119 S.Ct. 1430, 143 L.Ed.2d 635 (1999) (noting that Congress explicitly

provided for federal removal in the Price-Anderson Act).  So, a claim arises under

federal law only when the plaintiff's well-pleaded complaint raises issues of federal

---

[6]Title 42 U.S.C. § 2210(n)(2) of the Price-Anderson Act  provides in pertinent part that,
"[w]ith respect to any public liability action arising out of or resulting from a nuclear incident,
the United States district court in the district where the nuclear incident takes place, or in the
case of a nuclear incident taking place outside the United States, the United States District
Court for the District of Columbia, shall have original jurisdiction without regard to the
citizenship of any party or the amount in controversy... ."

law."  *Heimann v. National Elevator Indus. Pension Fund*, 187 F.3d 493, 499 (5th Cir.

1999).

 In the instant case, the plaintiff has not done so, but this is not necessarily

dispositive of the matter.  As noted previously, there are circumstances in which a

claim pled as a state law claim will be considered to arise under federal law.  Studying

the plaintiff's complaint in the instant case through the lens of the artful pleading

doctrine, this court looks to see if the plaintiff has asserted anything which completely

preempts a state cause of action and makes this dispute a federal cause of action.

*See Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23,

103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).  As noted, the plaintiff has asserted no

particular claim of a federal nature.  The defendants point to no claim of the plaintiff

which they regard to be to be within the scope of a completely preempted federal

claim.  The matter of a federal claim providing complete preemption is, at this time,

still a matter of speculation.  The defendants' affinity for the harbor of federal

jurisdiction is based only upon what they believe the plaintiff might assert.  The plaintiff

has responded to this concern, stating that any assertion he might make would be

used to prove his state law claims that the defendants obstructed a federal

investigation relating to the plaintiff's charge of their alleged violations of federal law,

then retaliated against the plaintiff for attempting to expose illegal activity.

 As the removing parties, the defendants have the burden of overcoming this

court's initial presumption against jurisdiction and establishing that removal is proper.

*Howery v. Allstate Insurance Company*, 243 F.3d 912, 916 (5th Cir. 2001).  The

removal statute is to be strictly construed, *Frank v. Bear Stearns & Company*, 128

F.3d 919, 922 (5th Cir. 1997), and "doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 339 (5th Cir. 2000).

At this point this court cannot know whether ordinary or complete preemption is being presented by the defendants in their attempt to achieve federal question jurisdiction.  Removal of this lawsuit is, at this time, based only upon the plaintiff's admission that he might assert a claim that is federal or federal in nature, without showing this court that the plaintiff is claiming a matter of complete preemption which will permit removal to the federal forum.  Complete preemption is quite rare and will be found only where it is expressly provided for by statute.  *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 925 (5th Cir. 1997).  Presently, complete preemption arises only with respect to federal labor relations law and the Employee Retirement Security Act of 1974 (ERISA), and usury claims against national banks.  *Carpenter v. Wichita Falls Independent School District*, 44 F.3d 362, 367 (5th Cir. 1995);  *Beneficial National Bank v. Anderson*, 539 U.S. 1, 123 S.Ct. 2058, 2063, 156 L.Ed.2d 1 (2003).  Outside of these limited areas, a plaintiff is free to seek recovery solely under state law, and defendants may not seek to transform these claims into federal ones through the artful pleading doctrine.  Therefore, this court finds that federal question jurisdiction over this case is not present and removal of the case to this forum is improper at this time;  however, this is not the end of the matters raised by the defendants.

### THE FUGITIVE DISENTITLEMENT DOCTRINE

The defendants also contend that the instant case should be dismissed because the plaintiff is now a federal fugitive.  The Fugitive Disentitlement Doctrine limits a fugitive's access to the judicial system when he or she has fled criminal conviction in a court of the United States.  *Magluta v. Samples*, 162 F.3d 662, 664 (11th Cir. 1998).  Although the doctrine has historically been utilized by Courts of Appeal to dismiss appeals of fugitives, district courts may sanction or enter judgment against parties based on their fugitive status. *Id*.  The rationale for the doctrine includes difficulty of enforcement against one not willing to subject himself to the court's authority;  the inequity of allowing a fugitive to use court resources only if the outcome is an aid to him;  and the need to avoid prejudice to the non fugitive party. *Degen v. United States*, 517 U.S. 820, 824-25, 828, 116 S.Ct. 1777, 135 L.Ed.2d 102 (1996); *United States v. Barnette*, 129 F.3d 1179, 1183 (11th Cir. 1997).  Recently, the United States Court of Appeals for the Fifth Circuit has observed that the disentitlement doctrine does not allow "a court in a civil forfeiture suit to enter judgment against a claimant because he is a fugitive from, or otherwise is resisting, a related criminal prosecution." *Bagwell v. Dretke*, 376 F.3d 408, 413 (5th Cir. 2004).  Citing *Degen*, the Fifth Circuit recited the commonly articulated justifications for the doctrine: 1) the risk of delay or frustration in determining the merits of the claim; 2) the unenforceability of the judgment; 3) the compromising of a criminal case by the use of civil discovery mechanisms; 4) the indignity visited on the court; and 5) deterrence.  If none of these justifications were applicable to the civil forfeiture suit, said the Fifth Circuit, then dismissal based on disentitlement was inappropriate.  *Id*.

Dismissal of a civil action based on the Fugitive Disentitlement Doctrine requires at least three things, that (1) the plaintiff is a fugitive; (2) his fugitive status has a connection to his civil action; and (3) the sanction employed by the district court, dismissal, is necessary to effectuate the concerns underlying the Fugitive Disentitlement doctrine. *Degen*, 517 U.S. at 829; *Ortega-Rodriguez v. United States*, 507 U.S. 234, 242-49, 113 S.Ct. 1199, 122 L.Ed.2d 581 (1993); *Magluta*, 162 F.3d at 664. The district court's power to dismiss a cause "is an inherent aspect of its authority to enforce its orders and insure prompt disposition of lawsuits." *Jones v. Graham*, 709 F.2d 1457, 1458 (11th Cir. 1983). The United States Supreme Court recognizes, though, that dismissal is often an "excessive response" to the concerns underlying the fugitive disentitlement doctrine. *Degen*, 517 U.S. at 829.

The Fugitive Disentitlement Doctrine, as restated by the United States Supreme Court in *Degen*, does not automatically disqualify a fugitive from justice from maintaining an action in a federal court. In *Degen* the fugitive was living openly in Switzerland, which refused to extradite him to the United States on the ground that the extradition treaty between the two countries did not cover his crime. Since he was living openly in a friendly nation, the fugitive was — at least so far as appeared at the early stage of the case in which it reached the Supreme Court --- as amenable to the process and discipline of the federal courts as any other litigant in a federal court who resides in a foreign country. Thus, his fugitive status did not impose an unusual inconvenience on the court or his adversaries. To have disqualified Degen from participating — indeed from defending, for he was the defendant in the suit, a civil suit

for forfeiture — would have served only punitive purposes, and the Supreme Court thought the punishment excessive.  There were, so far as appeared to the Supreme Court, adequate means, short of forfeiture of Degen's defense, of protecting both his adversary and the court from the consequences of his fugitive status.


In the instant case, the fugitive is the plaintiff, not a defendant.  The defendants in the instant case contend that this case is different because the plaintiff's fugitive status places him entirely beyond the control of this court, thereby creating a situation prejudicial to the defendants.  Since his whereabouts are unknown, the plaintiff cannot be deposed by the defendants or made to pay costs (should he lose), or attorneys' fees (should he lose and his suit be adjudged sanctionably frivolous).  So, say defendants, in these circumstances this court simply should invoke the doctrine and dismiss the suit without further ado.  This court is not persuaded, given the current posture of the case.

The primary question before this court is whether removal to this federal forum was appropriate, given the averments contained in the plaintiff's complaint.  This court already has concluded that removal was not appropriate.  The defendants have presented no basis acceptable under the complete preemption doctrine or the artful pleading doctrine for concluding that removal is proper in this case.  So far, from the record before this court, the plaintiff has not been absent from the proceedings.  He has participated in discovery and has filed a motion to remand this case to state court after what he perceives to be an improper removal.  This is no more or less than most plaintiffs would have done in circumstances such as these, regardless of whether they

were fugitives.  The record simply does not support any contention by the defendants that the plaintiff has remained unavailable.

Furthermore, the defendants have not shown this court that the plaintiff is using his fugitive status in any way to avoid the jurisdiction of the Mississippi civil courts, or to create difficulty in enforcing any orders of a civil court, or to insulate himself from the civil court's authority.  Thus, this court concludes that rejecting application of the fugitive disentitlement doctrine in this case will not offend the concerns underlying the doctrine.

Finally, the defendants do no require the jurisdiction of this court in order to dismiss this case if the plaintiff fails to appear or to respond in the state court.  The state court is fully capable of addressing such matters.  Ultimately, upon remand to state court, the defendants may be able to show that the plaintiff has not been in regular contact with his attorney, that he will not appear for deposition, and/or that he has not prosecuted his case.  Under Mississippi law, a trial court possesses the inherent authority to dismiss an action for want of prosecution;  this power is a necessary means to the orderly expedition of justice and the state trial court's control of its own docket.  *Camacho v. Chandeleur Homes, Inc.*, 862 So.2d 540, 542 (Miss. App. 2003).

## **CONCLUSION**

Therefore, based on the foregoing authority, this court hereby grants the plaintiff's motion to remand this case to the Circuit Court for the First Judicial District of

Hinds County, Mississippi [**Docket No. 4-1**].  All other pending motions are terminated

as moot.

        **SO ORDERED** this the 31st day of March, 2006.

                                  s/ HENRY T. WINGATE

                                  CHIEF UNITED STATES DISTRICT JUDGE

Civil Action No. 3:04-cv-792WS
Order Granting Remand